**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Mary MARCYES and James Siddle,
Defendants-Appellants.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Benjamin REED, Defendant-Appellant.**

**Nos. 76–2686 and 76–2848.**

United States Court of Appeals,
Ninth Circuit.

July 26, 1977.

John H. Clinebell, Tacoma, Wash., Irwin H. Schwartz, Federal Public Defender, Seattle, Wash., for defendants-appellants.

Robert M. Taylor, U. S. Atty., Jack A. Meyerson, Asst. U. S. Atty., Seattle, Wash., for plaintiff-appellee.

Before WRIGHT, KILKENNY and ANDERSON, Circuit Judges.

J. BLAINE ANDERSON, Circuit Judge:

This is an appeal from an order of the district court affirming the magistrate's conviction, without a jury, of appellants on two counts for (1) possessing unmarked and unclassified and dangerous fireworks in violation of Washington state law, RCW 70.77, sections 485, 540 and 130, all in violation of federal law under the Assimilative Crimes Acts, 18 U.S.C. § 13 and 18 U.S.C. § 1152; and (2) assault and obstruction of a United States officer in violation of 18 U.S.C. § 1501.

The facts are largely undisputed and viewing them in the light most favorable to the government discloses that appellants were the operators of fireworks stands, selling to the public, on the Puyallup Indian Reservation, located in East Tacoma, Washington. On June 28, 1975, the United States Marshal for the Western District of Washington and several of his deputies approached the fireworks stands for the purpose of serving on appellants a restraining order and preliminary injunction issued earlier by the district court and also for the purpose of executing a search warrant issued by a U. S. Magistrate. In the course of performing these duties the marshals observed illegal fireworks and proceeded to seize the fireworks pursuant to the warrant. During the attempted seizure, the appellants assaulted, threatened and otherwise obstructed the marshals in the performance of their duties.

All three appellants waived their right to be tried before the district court and were tried by a magistrate. Before the magistrate Appellants Marcyes and Siddle were represented by counsel. Appellant Reed acted without counsel before the magistrate, but obtained counsel when the case was appealed to the district court, and was appointed counsel for this appeal. All three appellants filed pretrial motions to dismiss, arguing that the government had no authority to proceed under the Assimilative Crimes Act. The magistrate denied the motions and at trial the appellants presented no evidence on their behalf, nor did they question any of the government's witnesses, choosing instead to rely on the legal grounds raised by their motions to dismiss. Each appellant was found guilty as charged by the magistrate and the district court affirmed the convictions by memorandum decision. This appeal followed.

After oral argument, on March 25, 1977, we granted the motion of the National Association of Criminal Defense Lawyers to file their brief and appear as amicus curiae.

All appellants argue that the Assimilative Crimes Act is inapplicable to the present prosecution, and also that the search warrant was invalid and that they cannot be convicted for resisting the execution of an invalid warrant. Appellant Reed argues that he was not properly advised of his right to a jury trial and also that he was not adequately voir dired regarding the waiver of counsel.

*ASSIMILATIVE CRIMES ACT*

The Assimilative Crimes Act (ACA), 18 U.S.C. § 13, states:

Whoever within or upon any of the places now existing or hereafter reserved or ac-

quired as provided in section 7 of this title, is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.

Appellants concede, on this appeal, that the ACA is a general law of the United States made applicable to Indian reservations by 18 U.S.C. § 1152 (Appellants' opening brief, p. 6). Their chief argument is that the ACA only incorporates the general criminal code or prohibitory laws of a state and cannot be utilized to enforce the penal provisions of state regulatory laws such as Washington's fireworks laws. Appellants also argue that Washington's laws cannot be assimilated because the government has adopted other standards regarding fireworks which they contend are controlling.

A literal reading of the statute ("any act or omission") would seem to indicate that appellants' regulatory/prohibitory distinction is unavailing. However, there is support for their contention in the case law. In *Johnson v. Yellow Cab Transit Co.*, 321 U.S. 383, 64 S.Ct. 622, 88 L.Ed. 814 (1944), the Supreme Court, in footnote 8, indicated that a strong argument èxists that Congress did not intend to include the penal provisions of a state regulatory system within the ACA. The rationale for this argument is obvious; a state could thereby enforce its regulatory system on the federal jurisdiction by making criminal any failure to comply with those regulations (i. e., licenses, permits, etc.). Appellants argue that this result is even stronger when applied to an Indian reservation because a state would thereby be able to implement all of its regulatory provisions on Indian reservations and thereby destroy the strong concept of tribal sovereignty carried on in such cases as *Bryan v. Itasca County*, 426 U.S. 373, 96 S.Ct. 2102, 48 L.Ed.2d 710 (1976), and *Santa Rosa Band of Indians v. Kings County*, 532 F.2d 655 (9th Cir. 1975).

■ We first note that the extent and scope of appellants' argument is misdirected since the Supreme Court has struck down attempts to impose state tax and license fees on Indians on a reservation. *Moe v. Salish & Kootenai Tribes*, 425 U.S. 463, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976). Moreover, whatever persuasiveness appellants' argument may have is lost if the Washington statutory scheme is considered prohibitory rather than regulatory. We conclude that Washington's fireworks law is a prohibitory rather than a regulatory law. Even though the Washington scheme allows for limited exceptions (i. e., public displays, RCW § 70.77.290; movies, RCW § 70.77.-535), its intent is to prohibit the general possession and/or sale of dangerous fireworks and is not primarily a licensing law.

The possession of fireworks is not the same situation encountered in other regulatory schemes such as hunting or fishing, where a person who wants to hunt or fish merely has to pay a fee and obtain a license. The purpose of such statutes is to regulate the described conduct and to generate revenues. In contrast, the purpose of the fireworks laws is not to generate income, but rather to prohibit their general use and possession in a legitimate effort to promote the safety and health of all citizens. Moreover, by allowing appellants to operate their stands on the reservation or in any federal enclave would entirely circumvent Washington's determination that the possession of fireworks is dangerous to the general welfare of its citizens.

■ We also note that Congress' purpose in enacting the ACA was to fill in the gaps in the criminal law applicable to federal enclaves created by the failure of Congress to pass specific criminal statutes. *United States v. Sharpnack*, 355 U.S. 286, 78 S.Ct. 291, 2 L.Ed.2d 282 (1958); *Williams v. United States*, 327 U.S. 711, 66 S.Ct. 778, 90 L.Ed. 962 (1946). Thus, the ACA establishes uniformity in a state's prohibitory laws where such conduct is not made penal by federal statutes. Our holding today upholds this policy by insuring that Wash-

ington's fireworks laws will be uniformly applied to all citizens—white or non-white, on or off the reservation.[1]

Appellants' next argument is that, even if the penal provisions of a state's regulatory scheme are incorporated, the Washington fireworks laws may not be assimilated because Congress has provided other standards which are controlling and preempt the field. Appellants point to the Consumer Product Safety Act (C.P.S.A.), 15 U.S.C. § 2051, et seq., and the Federal Hazardous Substances Act (F.H.S.A.), 15 U.S.C. § 1261, et seq. While we agree with appellants that the Government can assimilate state law under the ACA only if no act of Congress makes such conduct punishable, *United States v. Williams, supra,* their argument misses the point since the C.P.S.A. and the F.H.S.A. deal with the labeling, transportation and other minimum safety standards which apply to those fireworks which are otherwise legally capable of being possessed under state law. Neither C.P.S.A. nor the F.H.S.A. prohibit the possession of the type of fireworks encountered here.

The F.H.S.A. was enacted to proscribe interstate commerce in certain ultrahazardous substances and to ensure that other hazardous substances not totally banned were properly labeled, describing the substance and the possible hazard to be expected therefrom. 15 U.S.C. § 1263. In dealing with common fireworks, it is clear that Congress did not totally ban interstate dealings in such items, but rather required that they be properly labeled. 15 U.S.C. § 1261(q)(1)(ii). The legislative history of the F.H.S.A. discloses Congressional intent not to restrict states from otherwise prohibiting fireworks:

> "Moreover, the limited preemption amendment relates only to labeling and would not preclude States or localities from prohibiting altogether an article, such as fireworks, which would not be banned under the Federal act if properly labeled."

1966 U.S.Code Cong. & Admin.News, pp. 4095, 4097.

The C.P.S.A. was enacted to protect the public against unreasonable risks of injury from consumer goods by evaluating the

---

1. Amicus, ignoring appellants' concession that the A.C.A. is a general law of the United States made applicable to Indian reservations by 18 U.S.C. § 1152, argues that the A.C.A. is not applicable to crimes committed in Indian country and therefore the court below was without jurisdiction to hear the case. The district court rejected this argument made below and held that the A.C.A. was applicable by its own terms to Indian reservations, *as well as* incorporated by 18 U.S.C. § 1152.

   Amicus argues that *Williams v. United States,* 327 U.S. 711, 66 S.Ct. 778, 90 L.Ed. 962 (1946) did not decide the question of whether the A.C.A. is applicable to Indian country. We disagree. In *Williams* the petitioner, a married white man, was convicted of having had sexual intercourse, within an Indian reservation, with an unmarried Indian girl who was over the age of 16 but under 18 years of age. This act was made punishable under the laws of the State of Arizona and was incorporated as a federal crime under the provisions of 18 U.S.C. § 468 (the predecessor to 18 U.S.C. § 13). The Supreme Court's initial statement was "[t]his case turns upon the applicability of the Assimilative Crimes Act, . . . .." Since it was undisputed that the act took place within an Indian reservation, the threshold question nec-

   essarily decided was whether the A.C.A. even applied to Indian country. Amicus' argument that the court merely assumed its applicability without deciding the question is belied by the court's own words. The court stated:

   > "It is not disputed that this Indian reservation is 'reserved or acquired for the use of the United States, and under the exclusive or concurrent jurisdiction thereof,' or that it is 'Indian country' within the meaning of Rev. Stat. § 2145. [the predecessor to 18 U.S.C. § 1152]. This means that many sections of the Federal Criminal Code *apply to the reservation, including not only the Assimilative Crimes Act,* . . . .." 327 U.S. at 713, 66 S.Ct. at 779 (emphasis added)

   We would also note that the *Williams* court's ultimate decision, that the A.C.A. did not apply to the particular crime charged because the precise acts were made penal by *Federal* law and therefore the State's laws could not be incorporated, would never have been reached had the court felt that the A.C.A. did not apply to any crime committed upon Indian lands. Our own review of the language of 18 U.S.C. § 13 and 18 U.S.C. § 1152 convinces us that the district court was correct in holding that the A.C.A., by its own terms and through § 1152, is applicable to Indian country.

comparative safety of such items, developing uniform safety standards and to research and investigate product-related injuries. 15 U.S.C. § 2051(b). There is nothing in the Act or its regulations that prohibits the possession of common fireworks.

■ Since there is no other federal enactment making the possession of the type of fireworks in this case criminal, the ACA was properly utilized to incorporate Washington's laws regarding fireworks.

### SEARCH WARRANT

Appellants' sole contention here is that since Washington's fireworks law was improperly incorporated under the ACA, the search warrants looking for evidence of violations of that law were invalid and their resistance of an invalid warrant cannot support their conviction under 18 U.S.C. § 1501. *See Sparks v. United States,* 90 F.2d 61 (6th Cir. 1937). Having decided that the ACA was properly utilized in this case, we also find that the search warrants executed thereunder were valid and appellants' convictions under § 1501 must stand.

### RIGHT TO A JURY TRIAL

■ The maximum punishments for the crimes charged here were: (a) for violation of 18 U.S.C. § 1501, a fine of $300, one year or both, and (b) for violation of 18 U.S.C. § 13 which carries through the state penalty (see R.C.W. § 70.77.540) a fine of $1000, one year or both. Since the maximum jail time possible exceeded 6 months, but not more than one year, the offenses charged were "minor" in contrast to "petty" offenses. See 18 U.S.C. § 3401(f) and 18 U.S.C. § 1(3). As a result, appellants were constitutionally entitled to a jury trial, *Baldwin v. New York,* 399 U.S. 66, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970), if they chose to be tried in the district court.[2] Appellant Reed contends

that he was not fully advised of his right to trial by jury in violation of 18 U.S.C. § 3401(b). 18 U.S.C. § 3401(b) states:

(b) Any person charged with a minor offense may elect, however, to be tried before a judge of the district court for the district in which the offense was committed. The magistrate shall carefully explain to the defendant that he has a right to trial before a judge of the district court and that he may have a right to trial by jury before such judge and shall not proceed to try the case unless the defendant, after such explanation, signs a written consent to be tried before the magistrate that specifically waives both a trial before a judge of the district court and any right to trial by jury that he may have.

Appellant's right to a jury trial was explained to him at the initial hearing before the magistrate in the following manner:

THE COURT: Now the decision that each of you must first make is to whether you wish to have this matter heard before this Magistrate or not. Before I proceed there must be a written consent signed by the defendants, and failing that the matter is then something that would be heard in the United States District Court. The hearing before me would be without a jury. The facts after the trial would be determined by me as the hearer of the facts. Those facts would be in the event any one of you are found guilty would be the facts of the case reviewable by the District Court. It is not a trial de novo if there is an appeal. Now do you understand what I have said?

MR. REED: I understand it. (supplemental record, p. 6)

Appellant then executed a written consent from which he states in pertinent part:

I, Ben Reed, . . ., appearing before Robert E. Cooper, United States Magis-

---

2. In accordance with the special designation of magistrates to try certain minor offenses, any trial had before a magistrate is without a jury. Rule 3(c) of the Federal Rules of Procedure for the Trial of Minor Offenses before United States Magistrates states:

"(c) Trial
(1) Procedure. The trial shall be conducted as are trials of petty offenses in the district court by a district judge without a jury."

trate, who has fully apprised me of my right to elect to be tried before a judge of the United States District Court which has jurisdiction of the offense, and explained to me the consequences of this consent, do hereby consent to be prosecuted before the Magistrate on the charge hereinbefore stated. . . . (C.R. 51)

It is clear from the above-quoted transcript and the executed waiver form that, although the magistrate did advise appellant that the trial before him would be "without a jury" (thereby inferring that the trial before the district court would be with a jury), appellant was not specifically advised as to "any right to trial by jury that he may have." Since appellant was not specifically advised of his right to a jury trial before a district judge, appellant argues that he cannot be held to have specifically waived a right as required by 18 U.S.C. § 3401(b). *See Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

In *United States v. Miller*, 468 F.2d 1041 (1972), *cert. den.*, 410 U.S. 935, 93 S.Ct. 1389, 35 L.Ed.2d 599 (1973), the Fourth Circuit held that "strict adherence to § 3401(b) and Rules 2(b) and (c) is required".[3] In *Miller*, the court did advise the defendant that she had a right to be tried in the district court but he did not mention the

right to a jury trial. The transcript (468 F.2d at 1042–43, note 2) discloses that Miller was represented by an attorney and that she had discussed the matter of trial "to a point" with her attorney. The court, by analogy to *McCarthy v. United States*, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969) [which required mandatory compliance with Rule 11, F.R.Crim.P., in the acceptance of guilty pleas] reasoned that literal compliance with § 3401(b) was also required because the "magistrate's trial of a minor offender who is ignorant of his right to be tried by a jury prevents him from asserting his constitutionally protected demand for a jury."

In the present case, as stated above, it is clear that there was no literal compliance with § 3401(b). The Government argues that since appellant was advised that the trial before the magistrate would be without a jury, we should accept the inference that a trial before the district court would be with a jury. The difficulty with the Government's position is that by accepting inferences, especially when dealing with constitutional rights, we necessarily dilute the strong language used by Congress. The legislative history of the Act, as quoted in *Miller,* emphasizes Congress' intent that literal compliance with § 3401(b) is required to assure that any waiver is knowledgeably and intelligently made.[4]

---

**3.** Rules 2(b) and (c) of the Federal Rules of Procedure for the Trial of Minor Offenses before United States Magistrates. These rules are very similar to the requirements of 18 U.S.C. § 3401(b). Rule 2(b), which deals with minor offenses, requires that the magistrate "also explain to the defendant that he has a right to trial before a judge of the district court and a jury . . . ." Rule 2(c) provides that the consent must contain a waiver of "trial before a judge of the district court and a jury".

**4.** The House Report on the Magistrates Act, then Senate Bill 945, emphasized that a defendant's waiver of his right to a jury trial must be "knowledgable" and "intelligent":

> 7. It gives the U.S. magistrate an expanded trial jurisdiction over minor criminal offenses when the accused executes a knowledgeable waiver of both his right to trial before a U.S. district court and any right to trial by jury he may have.

Under the act's provisions, a U.S. magistrate's valid exercise of his minor offense trial jurisdiction is contingent upon:
> (1) His special designation to try these offenses by the judges of the U.S. district court;
> (2) The defendant's election to be tried before a magistrate rather than a judge of the U.S. district court; and
> (3) The defendant's intelligent waiver of whatever right to jury trial he may have before the district court. H.Rep. No. 1629, 90th Cong., 2d Sess. (1968). U.S.Code Cong. & Admin.News 1968, pp. 4252, 4254, 4264.

Mr. Poff, a proponent of the bill, pointed out during the House debates the indispensibility of the magistrate's explanation:
> Third, even a specially designated magistrate will be unable to exercise his jurisdiction unless both the prosecutor and the accused consent. The magistrate will be required to give every

In *Miller,* the Government also argued that the written consent form executed by Miller cured the magistrate's failure to explain her rights. This waiver form stated: "I hereby specifically waive both a trial before a Judge of the United States District Court and any right to trial by jury that I may have." The court held that this written consent was insufficient because the Act requires both a written consent and an explanation. In contrast, the waiver form executed by appellant did not refer to a jury trial, but merely reiterated the oral advice that appellant waived his right to be tried before a district judge.

This court, in *United States v. McCurdy,* 450 F.2d 282 (1971), in dealing with waivers of a jury under Rule 23(a), F.R.Crim.P., held that although a written waiver is preferred, an express oral waiver will suffice. The court noted, in quoting from *United States v. Guerrero-Peralta,* 446 F.2d 876, 877 (9th Cir. 1971), that the purpose of a written waiver is to provide "the best record evidence of the *express* consent of a defendant." (emphasis in original) and that this purpose will be accomplished where there is an express oral waiver that is intelligently and knowledgeably made. Acceptance of the Government's inference of waiver does not equate with an express oral waiver.

██ We hold that a magistrate must fully comply with § 3401(b) by specifically advising a defendant that he has a right to a trial before a judge of the district court and that he also must specifically explain to a defendant that he may have a right to

trial by jury before such judge. Appellant Reed was not specifically advised as to any right to jury trial that he may have had and his conviction must be reversed.

In light of our above conclusion, there is no need to discuss appellant Reed's other assignment of error.[5] The convictions of appellants Mary Marcyes and James Siddle are AFFIRMED and the judgment of conviction on both counts of appellant Benjamin Reed are VACATED and REMANDED for a new arraignment and proceedings consistent with this opinion.

defendant brought before him a careful explanation of his right to elect trial before a judge of the district court and of his right, in appropriate cases, to demand trial by jury before that judge. S. 945 specifically forbids the magistrate to proceed to trial unless the defendant, having heard the magistrate's explanation, executes a written election to be tried before the magistrate and a written waiver of whatever jury rights he has. 114 Cong.Rec. 27,341 (1968).

5. Since oral argument in this case, the Supreme Court has announced its decision in *Puyallup Tribe, Inc. v. Dept. of Game of Washington,*

—— U.S. ——, 97 S.Ct. 2616, 53 L.Ed.2d 667, 1977. Although none of the appellants have expressly sought to assert derivatively the sovereign immunity of the Puyallup Tribe, we note that the Supreme Court specifically rejected the notion by holding that tribal sovereign immunity "does not immunize the individual members of the Tribe." We do not think that the fact that the individual appellants were licensed by the Tribe to possess the fireworks should alter this principle of law. —— U.S. ——, 97 S.Ct. 2616.