The BARONA GROUP OF the CAPITAN GRANDE BAND OF MISSION INDIANS, SAN DIEGO COUNTY, CALIFORNIA, Plaintiff-Appellant,

v.

John DUFFY, the Sheriff of San Diego County, California, Defendant-Appellee.

No. 82–5408.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 5, 1982.

Decided Dec. 20, 1982.

Harrison W. Hertzberg, Hertzberg & Hertzberg, Los Angeles, Cal., for plaintiff-appellant.

Bruce W. Beach, San Diego, Cal., for defendant-appellee.

Before GOODWIN, HUG, and BOO-CHEVER, Circuit Judges.

BOOCHEVER, Circuit Judge:

Barona Group of the Capitan Grande Band of Mission Indians ("Barona") filed suit requesting declaratory and injunctive relief from the enforcement against them of certain county and state laws pertaining to the operation of bingo games by John Duffy, the Sheriff of San Diego County, California (the County). Summary judgment was entered for the County on March 26, 1982, and Barona has appealed. We reverse.

FACTS

Barona is an independent Indian Nation recognized by federal statute with its reser-

vation in the County of San Diego. Act of February 28, 1919, Pub.L. No. 299, 40 Stat. 1206 *amended by* 47 Stat. 146 (1932). On April 20, 1981, the Tribal Council of the Barona Tribe, the Tribe's governing body, enacted a Tribal Ordinance authorizing, with certain restrictions, the playing of bingo within the reservation. The Tribe subsequently entered into a management agreement with American Amusement Management, Inc., to commence a bingo operation within the reservation.

On June 25, 1981 the undersheriff of the County informed representatives of Barona that the bingo ordinance of the County of San Diego prohibited the Tribe's bingo operation. The undersheriff also said that the ordinance would be enforced to the extent of entry on Indian territory to cite or arrest the participants in the bingo operation. The Tribe then sought injunctive and declaratory relief against the Sheriff on the ground that the Sheriff is without lawful authority to enforce the state or county laws regarding bingo on the Barona Reservation.[1]

## STANDARD OF REVIEW

In reviewing a grant of summary judgment, our task is identical to that of the trial court. *State ex rel. Edwards v. Heimann,* 633 F.2d 886, 888 n. 1 (9th Cir. 1980). Viewing the evidence *de novo,* in the light most favorable to the party against whom summary judgment is granted, we must determine whether the trial court correctly found that there was no genuine issue of material fact and that the moving party was entitled to judgment as a matter of law. *Heiniger v. City of Phoenix,*

625 F.2d 842, 843 (9th Cir.1980). The present case is suitable for summary judgment because there is no genuine issue of material fact. We reverse, however, on the basis of the legal issues involved.

## DISCUSSION

### I.

#### Statutes Involved

The California legislature, in accordance with state constitutional limitations,[2] adopted Cal.Penal Code § 326.5 (West Supp.1982) which controls the conduct of bingo games. This statute removes from the general prohibition of various forms of gambling the conduct of bingo games pursuant to city or county ordinance as provided in the California Constitution. The County passed such an ordinance allowing bingo games conducted by certain charitable organizations. Barona contends that these provisions do not apply to them because the state and county lacked a grant of power from the federal government to impose or enforce these laws within the confines of the reservation. The County contends that such power is granted under the Act of August 15, 1953, Pub.L. No. 83–280, 67 Stat. 588 (commonly known as "Public Law 280").

Public Law 280 does provide some applicability of state law over on-reservation activities. Section 4, codified at 28 U.S.C. § 1360, grants states civil jurisdiction over Indian reservations in words that on the surface seem to make all state laws of general application effective.[3] The Su-

---

1. The trial court determined that a case or controversy did exist and we agree. *See Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 297–98, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979).

2. Article 4, § 19 of the California State Constitution states:
   (a) The Legislature has no power to authorize lotteries and shall prohibit the sale of lottery tickets in the State.
   . . . .
   (c) Notwithstanding subdivision (a), the Legislature by statute may authorize cities

and counties to provide for bingo games, but only for charitable purposes.

3. Section 4(a), as codified at 28 U.S.C. § 1360(a) (1976), provides:
   (a) Each of the States ... listed in the following table shall have jurisdiction over civil causes of action between Indians or to which Indians are parties which arise in the areas of Indian country listed ... to the same extent that such State ... has jurisdiction over other civil causes of action, and those civil laws of such State ... that are of general application to private persons or private

preme Court, however, has construed this section to mean that states have jurisdiction only over private civil litigation involving reservation Indians in state court. *Bryan v. Itasca County,* 426 U.S. 373, 385, 96 S.Ct. 2102, 2109, 48 L.Ed.2d 710 (1976). Thus, a state may not impose general civil/regulatory laws on the reservation. Section 2 of Public Law 280, codified at 18 U.S.C. § 1162,[4] however, confers on certain states, including California, full criminal jurisdiction over offenses committed by Indians on the reservation. Thus, whether the state and county laws apply to the Tribe's bingo enterprise depends on whether the laws are classified as civil/regulatory or criminal/prohibitory.

## II.

### The Caselaw

We addressed this issue in *United States v. Marcyes,* 557 F.2d 1361 (9th Cir.1977). In that case, members of the Puyallup Indian Tribe were convicted for possessing certain unmarked and unclassified fireworks in violation of Washington State Law. The court was construing the Assimilative Crimes Act, 18 U.S.C. §§ 13, 1152 (1976). That Act was held to have incorporated the general criminal laws of a state, but not the civil/regulatory laws. *Marcyes,* 557 F.2d at 1364. In determining that the Washington law was prohibitory rather than regulatory, the court said:

> Even though the Washington scheme allows for limited exceptions (i.e., public displays, ... movies, ...), its intent is to prohibit the general possession and/or sale of dangerous fireworks and is not primarily a licensing law.

property shall have the same force and effect within such Indian country as they have elsewhere within the State ...:

....

California ..... All Indian country within the State.

4. Section 2(a), as codified at 18 U.S.C. § 1162(a) (1976), provides:

(a) Each of the States ... listed in the following table shall have jurisdiction over offenses committed by or against Indians in the areas of Indian country listed ... to the same extent that such State ... has jurisdiction over offenses committed elsewhere with-

The possession of fireworks is not the same situation encountered in other regulatory schemes such as hunting or fishing, where a person who wants to hunt or fish merely has to pay a fee and obtain a license. The purpose of such statutes is to regulate the described conduct and to generate revenues. In contrast, the purpose of the fireworks laws is not to generate income, but rather to prohibit their general use and possession in a legitimate effort to promote the safety and health of all citizens. Moreover, by allowing appellants to operate their stands on the reservation or in any federal enclave would entirely circumvent Washington's determination that the possession of fireworks is dangerous to the general welfare of its citizens.

*Marcyes,* 557 F.2d at 1365. We are confronted with the question of whether the County's bingo laws are similarly prohibitory.

The Fifth Circuit has recently distinguished *Marcyes* in determining the scope of Public Law 280 jurisdiction to facts almost identical to the present case. We find *Seminole Tribe of Florida v. Butterworth,* 658 F.2d 310 (5th Cir.1981), *cert. denied,* 455 U.S. 1020, 102 S.Ct. 1717, 72 L.Ed.2d 138 (1982), persuasive. In *Butterworth,* like the present case, pursuant to a state constitutional grant of power, the state statute excepted bingo operations by certain charitable organizations and under certain conditions from a general prohibition of gambling.[5] The Fifth Circuit determined that whether a statute may be classified as regu-

in the State ..., and the criminal laws of such State ... shall have the same force and effect within such Indian country as they have elsewhere within the State....

....

California .....All Indian country within the State.

5. When the Florida statute was first enacted, it contained no sanctions for its violation. The court recognized in a footnote that this arguably indicates a legislative intent that the statute be construed as regulatory. *Butterworth,* 658 F.2d at 314 n. 6. The district court in the present case placed heavy emphasis on this

latory or prohibitory depended on whether the legislature deemed the activity to be against the public policy of the state. Evaluating the statute, the court determined that the legislature meant only to regulate bingo. The court based this determination on the fact that bingo is allowed in Florida as a form of recreation, that certain worthy organizations are allowed to benefit from bingo and that the state regulates bingo halls only to prevent the game of bingo from becoming a money-making venture. 658 F.2d at 314–15. *Marcyes* was distinguished on the basis that the *Marcyes* court had found that possession of dangerous fireworks was "generally" prohibited and not merely licensed. This evidenced Washington's public policy against dangerous fireworks.

Another Ninth Circuit case, *United States v. Farris,* 624 F.2d 890 (9th Cir.1980), *cert. denied,* 449 U.S. 1111, 101 S.Ct. 920, 66 L.Ed.2d 839 (1981), gives additional support for the "public policy" test. In *Farris,* the court was considering whether the provisions of the Organized Crime Control Act of 1970, 18 U.S.C. § 1955 (1976), could apply to gambling on the Puyallup Indian reservation. The court found that the "violation of the law of state" requirement of § 1955 was intended to include in the federal prohibition those gambling operations contrary to state public policy, as was the Puyallup gambling. Based on this analysis, the *Butterworth* court concluded that the state's public policy determines whether the activity is prohibited or regulated.

The scope of Public Law 280 as applied to bingo games is also addressed in *Oneida Tribe of Indians v. Wisconsin,* 518 F.Supp. 712 (W.D.Wis.1981). In *Oneida* the district court was confronted with a factual situation and state statutory scheme virtually identical to those found in *Butterworth.* Using what it called a *Marcyes/Butter-*

*worth* analysis, the *Oneida* court also determined that the bingo laws were regulatory and not prohibitory. The court rested its decision primarily on the fact that the Wisconsin statute only provided penalties for operation of bingo games not in accordance with the statute. The general populace was allowed to *play* at will. Thus, the court reasoned that bingo was not contrary to public policy.

Although the test for determining when a state statutory scheme such as the present one should apply to tribal members on their reservation is not susceptible of easy application, we conclude for a number of reasons that the County's bingo laws are regulatory and of a civil nature.

First, the state statute authorizes bingo operations by tax exempt organizations including, for example, fraternal societies, recreational clubs, senior citizen organizations, real estate boards and labor and agricultural groups. Cal.Penal Code § 326.5(a) (West Supp.1982). There is no general prohibition against playing bingo as there was against fireworks in *Marcyes.* As in *Butterworth,* the California statute regulates bingo as a money making venture by limiting size of prizes, requiring that all proceeds be applied to charitable purposes, and requiring that the game be operated by volunteers from the authorized organization. The fact that so many diverse organizations are allowed to conduct bingo operations, albeit under strict regulation, is contrary to a finding that such operations violate California public policy.

Second, as was pointed out in the *Oneida* case, the general public is allowed to play bingo at will in an authorized game. This cuts against a public policy prohibition.

Third, the Supreme Court has laid down several rules of construction applicable to

factor in distinguishing the *Butterworth* case. It is clear from the text of the *Butterworth* opinion, however, that the Fifth Circuit did not rely heavily on the presence of penal sanctions in classifying the statute. *Butterworth,* 658 F.2d at 314; *see also Marcyes,* 557 F.2d at 1364 (state not allowed to enforce regulatory system on Indian reservation by making criminal fail-

ure to comply with regulations). Rather, that court relied on a consideration of a "public policy" test developed from Ninth Circuit cases. Moreover, criminal sanctions had been enacted before the *Butterworth* case was filed, so that the provisions considered by the Fifth Circuit were essentially the same as those of the County's ordinance.

statutes affecting Indian affairs which undercut application of the bingo laws in this case. Ambiguities in statutes concerning dependent tribes are to be resolved in favor of the Indians. *Oliphant v. Suquamish Indian Tribe,* 435 U.S. 191, 208 n. 17, 98 S.Ct. 1011, 1020 n. 17, 55 L.Ed.2d 209 (1978); *Bryan v. Itasca County,* 426 U.S. 373, 392, 96 S.Ct. 2102, 2112, 48 L.Ed.2d 710 (1976). State jurisdiction over reservations, historically, is strongly disfavored. *Bryan,* 426 U.S. at 376 n. 2, 96 S.Ct. at 2105, n. 2; *McClanahan v. Arizona State Tax Commission,* 411 U.S. 164, 168, 93 S.Ct. 1257, 1260, 36 L.Ed.2d 129 (1973). Moreover, enforcement of the bingo laws is contrary to the present federal policy of encouraging tribal self-government. *See United States v. Wheeler,* 435 U.S. 313, 322–26, 98 S.Ct. 1079, 1085–87, 55 L.Ed.2d 303 (1978); *Bryan,* 426 U.S. at 388–89 n. 14, 96 S.Ct. at 2110–11 n. 14; *see also* the Indian Self-Determination and Education Assistance Act, 25 U.S.C. § 450 et seq. (1976); Civil Rights Act of 1968, Title IV, 25 U.S.C. §§ 1321–1326 (1976) (requiring tribal consent to further state assumption of jurisdiction under Public Law 280). The decisions addressing similar bingo statutes have acknowledged the closeness of the question, but have found in favor of the reservation Indians on the basis of these strong policies.

Finally, the stated purpose of the tribal bingo ordinance is to collect money "for the support of programs to promote the health, education and general welfare" of the Barona Tribe. This intent to better the Indian community is as worthy as the other charitable purposes to which bingo proceeds are lawfully authorized under the California statute. Although the Barona bingo operation does not fully comply with the letter of the statutory scheme, it does at least fall within the general tenor of its permissive intent.[6]

### III.

### The Federal Organized Crime Control Act

██ Appellee argues that it can prohibit the tribal bingo operation under federal law, regardless of whether the state laws are civil or criminal, by reliance on the Organized Crime Control Act of 1970, 18 U.S.C. § 1955 (1976). This federal law incorporates by reference certain state gambling laws and makes the violation of the state provisions a federal offense.

In *United States v. Farris,* 624 F.2d 890 (9th Cir.1980), *cert. denied,* 449 U.S. 1111, 101 S.Ct. 920, 66 L.Ed.2d 839 (1981), we held that whether a tribal activity is "a violation of the law of a state" within the meaning of § 1955 depends on whether it is contrary to the "public policy" of the state. *Id.* at 895–96. Thus, *Farris* makes co-extensive the tests for application of state law to Indian reservations under § 1955 and for direct application of state law under Public Law 280. Because we have concluded that bingo games are not contrary to the public policy of California, the activity is not violative of § 1955.

The summary judgment is reversed and the case is remanded for the purpose of entering judgment for Barona.

REVERSED and REMANDED.

---

**6.** The trial court emphasized that the statutory scheme is not for the purpose of licensing or raising revenue. But as the *Butterworth* court recognized, "[r]egulation may appear in forms other than licensing, and the fact that a form of gambling is self-regulated as opposed to state-regulated through licensing does not require a ruling that the activity is prohibited." 658 F.2d at 315. Further, zoning laws do not license and do not raise revenue, but have been held regulatory and inapplicable to Indian reservations. *United States v. County of Humboldt,* 615 F.2d 1260 (9th Cir.1980).