Dear Honorable Lawter,
The Attorney General has received your request for an official opinion asking, in effect:
 1. Would it be unlawful for a person to possess, within Indian Country located within the boundaries of the State of Oklahoma, as the term Indian Country is defined in 18 U.S.C.A. 1151, a slot machine used for gambling purposes?
 2. Would it be unlawful to conduct, within Indian Country located within the boundaries of the State of Oklahoma, as the term Indian Country is defined in 18 U.S.C.A. 1151, a lottery?
It is provided in 15 U.S.C.A. 1175 in pertinent part as follows:
 "It shall be unlawful to manufacture, recondition, repair, sell, transport, possess, or use any gambling device . . . within Indian country as defined in section 1151 of Title 18[.]"
Section 15 U.S.C.A. 1175 is a part of the federal Gambling Devices Act,15 U.S.C.A. 1171 — 15 U.S.C.A. 1178 (hereafter referred to as the Act).
The Act defines gambling device as:
 "(1) any so-called `slot-machine' or any other machine or mechanical device an essential part of which is a drum or reel with insignia thereon, and (A) which when operated may deliver, as the result of the application of an element of chance, any money or property, or (B) by the operation of which a person may become entitled to receive, as the result of the application of an element of chance, any money or property; or
 "(2) any other machine or mechanical device (including, but not limited to, roulette wheels and similar devices) designed and manufactured primarily for use in connection with gambling, and (A) which when operated may deliver, as the result of the application of an element of chance, any money or property, or (B) by the operation of which a person may become entitled to receive, as the result of the application of an element of chance, any money or property; or
 "(3) any subassembly or essential part intended to be used in connection with any such machine or mechanical device, but which is not attached to any such machine or mechanical device as a constituent part." 15 U.S.C.A. 1171. (Emphasis added).
The Act further provides that, "Whoever violates any of the provisions of sections 1172, 1173, 1174 or 1175 [of the Act] shall be fined not more than $5,000 or imprisoned not more than two years or both."15 U.S.C.A. 1176.
The only potentially pertinent exemptions as to unlawfulness contained in the Act are found in sections 15 U.S.C.A. 1172 and 15 U.S.C.A. 1178. Section 15 U.S.C.A. 1172 provides in pertinent part:
 "It shall be unlawful knowingly to transport any gambling device to any place in a State, the district of Columbia, or a possession of the United States from any place outside of such State, the District of Columbia, or possession: Provided, That this section shall not apply to transportation of any gambling device to a place in any State which has enacted a law providing for the exemption of such State from the provisions of this section, or to a place in any subdivision of a State if the State in which such subdivision is located has enacted a law providing for the exemption of such subdivision from the provisions of this section, nor shall this section apply to any gambling device used or designed for use at and transported to licensed gambling establishments where betting is legal under applicable State laws: Provided further, That it shall not be unlawful to transport in interstate or foreign commerce any gambling device into any State in which the transported gambling device is specifically enumerated as lawful in a statute of that State."
Section 15 U.S.C.A. 1178 provides as follows:
 "None of the provisions of this [Act] shall be construed to apply —
 "(1) to any machine or mechanical device designed and manufactured primarily for use at a racetrack in connection with parimutuel betting,
 "(2) to any machine or mechanical device, such as a coin-operated bowling alley, shuffle-board, marble machine (a so-called pinball machine), or mechanical gun, which is not designed and manufactured primarily for use in connection with gambling, and (A) which when operated does not deliver, as a result of the application of an element of chance, any money or property, or (B) by the operation of which a person may not become entitled to receive, as the result of the application of an element of chance, any money or property, or
 "(3) to any so-called claw, crane, or digger machine and similar devices which are not operated by coin, are actuated by a crank, and are designed and manufactured primarily for use at carnivals or county or State fairs."
The statutes of the State of Oklahoma which pertain to slot machines are found at 21 O.S. 944 and 21 O.S. 964 — 21 O.S. 979. These statutes of the State of Oklahoma further provide that it is unlawful to possess a slot machine in Oklahoma, except for a slot machine that is twenty-five (25) years old or older and which is not used for gambling purposes. See, 21 O.S. 964(B) (1984). None of the statutes of the State of Oklahoma specifically dealing with slot machines or with gambling devices generally, as provided for in 21 O.S. 981 — 21 O.S. 988 (1984) purport to exempt any territory within the State of Oklahoma, including Indian Country therein, from the strictures contained in the Act. Therefore, we conclude that it would be unlawful pursuant to15 U.S.C.A. 1175 for a person to possess, within Indian Country located within the boundaries of the State of Oklahoma, as the term Indian Country is defined in 18 U.S.C.A. 1151, a slot machine used for gambling purposes.
Your second question concerns the lawfulness of conducting a lottery within Indian Country. Title 18 U.S.C.A. 1955 provides as follows:
 "(a) Whoever conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business shall be fined not more than $20,000 or imprisoned not more than five years, or both.
"(b) As used in this section
 "(1) `illegal gambling business' means a gambling business which
 "(i) is a violation of the law of a State or political subdivision in which it is conducted;
 "(ii) involves five or more persons who conduct, finance, man age, supervise, direct, or own all or part of such business; and
 "(iii) has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day.
 "(2) `gambling' includes but is not limited to pool-selling, bookmaking, maintaining slot machines, roulette wheels or dice tables, and conducting lotteries, policy, bolita or numbers games, or selling chances therein.
 "(3) `State' means any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, and any territory or possession of the United States.
 "(c) If five or more persons conduct, finance, manage, supervise, direct, or own all or part of a gambling business and such business operates for two or more successive days, then, for the purpose of obtaining warrants for arrests, interceptions, and other searches and seizures, probable cause that the business receives gross revenue in excess of $2,000 in any single day shall be deemed to have been established.
 "(d) Any property, including money, used in violation of the provisions of this section may be seized and forfeited to the United States. All provisions of law relating to the seizure, summary, and judicial forfeiture procedures, and condemnation of vessels, vehicles, merchandise, and baggage for violation of the customs laws; the disposition of such vessels, vehicles, merchandise, and baggage or the proceeds from such sale; the remission or mitigation of such forfeitures; and the compromise of claims and the award of compensation to informers in respect of such forfeitures shall apply to seizures and forfeitures incurred or alleged to have been incurred under the provisions of this section, insofar as applicable and not inconsistent with such provisions. Such duties as are imposed upon the collector of customs or any other person in respect to the seizure and forfeiture of vessels, vehicles, merchandise, and baggage under the customs laws shall be performed with respect to seizures and forfeitures of property used or intended for use in violation of this section by such officers, agents, or other persons as may be designated for that purpose by the Attorney General.
 "(e) This section shall not apply to any bingo game, lottery, or similar game of chance conducted by an organization exempt from tax under paragraph (3) of subsection (c) of section 501 of the Internal Revenue Code of 1954, as amended, if no part of the gross receipts derived from such activity inures to the benefit of any private shareholder, member, or employee of such organization except as compensation for actual expenses incurred by him in the conduct of such activity." (Emphasis added).
Section 1955 is a part of the federal Organized Crime Control Act of 1970 and the provisions thereof have been held to apply to illegal gambling activities conducted within Indian Country by Indians and non-Indians. See, United States v. Farris, 624 F.2d 890 (9th Cir. 1980).
It is assumed for the purposes of this opinion that by the term "lottery" you mean as that term is defined in 21 O.S. 1051 (1981), which provides:
 "A lottery is any scheme for the disposal or distribution of property by chance among persons who have paid, or promised, or agreed to pay any valuable consideration for the chance of obtaining such property, or a portion of it, or for any share of or interest in such property, upon any agreement, understanding or expectation that it is to be distributed or disposed of by a lot or chance, whether called a lottery, a raffle, or a gift enterprise, or by whatever name the same may be known. Valuable consideration shall be construed to mean money or goods of actual pecuniary value. Provided, it shall not be a violation of the lottery or gambling laws of this state for (1) a bona fide resident merchant or merchants of a city or town, acting in conjunction with the Chamber of Commerce or Commercial Club of this state thereof, to issue free of charge numbered tickets on sales of his merchandise, the corresponding stub of one or more of which tickets to be drawn or chosen by lot by a representative or representatives of said Chamber of Commerce or of said Commercial Club in the manner set forth on said tickets, the numbered stub or stubs so drawn to entitle the holder of the corresponding numbered issued ticket to a valuable prize donated by said merchant; (2) a bona fide community chest welfare fund on a military post or reservation to issue numbered tickets in conjunction with voluntary contributions to said fund, the corresponding stub or stubs of one or more of said tickets to be drawn by lot under the supervision of a military commander, the stub or stubs so drawn entitling the ticket holder to a prize of some value. Provided however, that no person shall sell tickets or receive contributions to said fund off the military reservation."
Further, 21 O.S. 1052 (1981) provides that, "Every lottery is unlawful, and a common public nuisance." Therefore, if all of the provisions of 18 U.S.C.A. 1955 as to number of persons conducting the lottery and the revenue gained therefrom, etc., are satisfied, conducting a lottery within Indian Country located in Oklahoma would be an illegal gambling business and unlawful as provided in Section 1955. Of course, whether all of the conditions precedent are present in any lottery situation within Indian Country is a question of fact which cannot be answered in this opinion.
However, even if all of the conditions precedent contained in Section 1955 were not present to invoke the strictures of that federal statute, the conducting of a lottery within Indian Country located in Oklahoma, that would have as participants therein non-Indians, would still be' unlawful. This is seen by an analysis of the applicability of the Assimilative Crimes Act (hereafter ACA), 18 U.S.C.A. 13. The ACA provides:
 "Whoever within [a federal enclave] is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment."
The ACA is referred to as an enclave law of the United States which has been extended to Indian Country by the provisions of 18 U.S.C.A. 1152, except as to crimes committed by one Indian against the person or property of another Indian, or to a situation where an Indian has been punished by the local law of the tribe or where, by the terms of a treaty, exclusive jurisdiction over the offense is secured to any Indian tribe. Farris, supra at 897. See also, United States v. Marcyes,557 F.2d 1361, 1364 (9th Cir. 1977); United States v. Sosseur, 181 F.2d 873
(7th Cir. 1950). The case of United States v. Sosseur, id., is particularly enlightening as to the applicability of the ACA on crimes such as gambling, which many times are categorized as victimless crimes. In Sosseur an Indian was convicted in federal court pursuant to the ACA for violating a Wisconsin state law which, in effect, prohibited the operation of slot machines in the state. Sosseur operated the machine on an Indian reservation in Wisconsin and the machines were utilized by both Indians and non-Indians alike. Wisconsin also made it a crime for any individual to gamble on such a slot machine. In holding that the ACA applied to Sosseur in this situation, the Court said:
 "And while the actual acts here alleged to constitute a violation of the law were committed by an Indian on a reservation and hence were not in the jurisdiction of the State . . . the impact of those acts was on non-Indians as well as Indians, and they tended to undermine the enforcement by the State of its own law. We think these circumstances rendered application of the Assimilative Crimes Act appropriate." Id. at 876.
The court in Sosseur also noted that the crime charged was not an offense by one Indian against another Indian, that Sosseur had not beenpunished under any tribal law and that no treaty term gave exclusive jurisdiction to the tribe involved. Thus, the court found the ACA applicable. See also, Farris, supra at 897. Of course, today the ACA would not be utilized for slot machine related offenses because of the enactment in 1951 of the Gambling Devices Act, 15 U.S.C.A. 1171 —15 U.S.C.A. 1178 and the applicability of 18 U.S.C.A. 1955 to an illegal gambling business which involved maintaining slot machines.
Further, as noted in Farris, supra at 897, the ACA is applicable to enforce, in federal court, prohibitory gambling laws of a state, such as the lottery prohibitions contained in the statutes of the State of Oklahoma. See, 21 O.S. 1051 — 21 O.S. 1068 (1981). Therefore, it would be unlawful to conduct a lottery within Indian Country located in the State of Oklahoma.
It is, therefore, the official opinion of the Attorney Generalthat:
 1. In that 21 O.S. 944 and 21 O.S. 964 - 21 O.S. 979 (1981) in no way purport to exempt any territory within the State of Oklahoma from the prohibitions contained in 15 U.S.C.A. 1175, it would be unlawful for a person to possess, within Indian Country located within the boundaries of the State of Oklahoma, as the term Indian Country is defined in 18 U.S.C.A. 1151, a slot machine used for gambling purposes; and
 2. It would be unlawful to conduct, within Indian Country located within the boundaries of the State of Oklahoma, as the term Indian Country is defined in 18 U.S.C.A. 1151, a lottery as defined in 21 O.S. 1051 (1981).
MICHAEL C. TURPEN, ATTORNEY GENERAL OF OKLAHOMA
JOHN GALOWITCH, ASSISTANT ATTORNEY GENERAL