**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Virginia CLARK, Defendant–Appellant.**

**No. 98–50371.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 5, 1999

Filed Nov. 1, 1999

Michael J. McCabe, San Diego, California, for the defendant-appellant.

Major Paul J. Leeds, USMC, Special Assistant United States Attorney, Joint Law Center, San Diego, California, for the plaintiff-appellee.

Before: RYMER, McKEOWN, Circuit Judges, and SHEA, District Judge.[1]

RYMER, Circuit Judge:

Virginia Clark appeals her conviction, following trial to the court, and sentence for practicing law without a license and holding herself out as being entitled to practice law by representing three Marines at their general Courts–Martial in violation of California Business and Professions Code § 6126, as assimilated by the Assimilative Crimes Act (ACA), 18 U.S.C. §§ 7 and 13. We must decide whether this particular section of state law, which makes it a misdemeanor to hold oneself out as entitled to practice law or otherwise to practice law without being an active member of the State Bar of California, is properly assimilated into federal law. The district court held that it was in a published opinion, *United States v. Clark*, 4 F.Supp.2d 940 (C.D.Cal.1998), and we agree. Section 6126 is penal, it is prohibitory, and it is not precluded by generally applicable federal law that evinces an intent to punish the culpable conduct to the exclusion of state law. As the other grounds in Clark's appeal do not require reversal, we affirm.

I

Having represented in letters to Major E.W. Loughran, the prosecutor in the general court-martial cases of *United States v. Private First Class Samuel R. Odom, U.S. Marine Corps, United States v. Lance Corporal William D. Waters, U.S. Marine Corps*, and *United States v. Lance Corporal Richard D. Vivian, U.S. Marine Corps*, that she would act as "head counsel" in these cases, Clark entered appearances on behalf of Odom, Waters, and Vivian in three separate hearings on June 6, 1997. During the *Odom* hearing, when the military judge asked Clark to state her name and legal qualifications, she responded, "I am associated with the Law Firm of Maxwell Agha as head counsel there." When the judge asked her if she were a member in good standing with the highest court in the state of California, she replied, "Yes, sir." In the next two hearings, Clark again represented that she was a member in good standing of the California Bar and stated that she was qualified to represent her clients. Based on her representations, Clark was sworn in as civilian defense counsel in all three cases. She was not in fact a member of the Bar but, rather, was working as a legal assistant for the Law Offices of Maxwell Agha. Agha was not present for any of the hearings.

On June 13, 1997, Clark appeared at three hearings concerning her conflict of interest in representing Odom, Waters, and Vivian in their related cases. She and the Agha firm were ultimately disqualified. Although Agha was present for the *Odom* hearing, he subsequently left for another engagement, telling the judge that Clark would handle the rest. During the last two proceedings, Clark was the only civilian defense "counsel" present. The military judge testified at trial that Clark was acting as "lead counsel" throughout.

As a result of the events of June 6 and 13, which occurred at the Marine Corps Air Station El Toro, a federal enclave, a four-count misdemeanor complaint was filed against Clark on September 19, 1997. She was charged with one count of holding herself out as being entitled to practice law and three counts of practicing law without a license, all in violation of Cal. Bus. & Prof.Code § 6126, as assimilated into federal law by the ACA. Clark moved to dismiss the complaint, but the district court held that § 6126 is a prohibitory

---

**1.** Honorable Edward F. Shea, United States District Judge for the Eastern District of    Washington, sitting by designation.

criminal statute that is properly assimilated.

Following a bench trial, Clark was found guilty on all four counts. She was sentenced to two years probation and, as a condition of probation, the court ordered that Clark "not be employed by, affiliated with, own or control, or otherwise participate, directly or indirectly, in the conduct of affairs of any law office, or any institution in the business of providing legal services." Clark timely appeals her conviction and sentence.

## II

### A

The ACA was enacted to borrow state law to fill in the gaps of federal criminal law applicable to federal enclaves that occur when Congress has not passed specific criminal statutes with respect to the missing offenses. *See Lewis v. United States*, 523 U.S. 155, ——, 118 S.Ct. 1135, 1139, 140 L.Ed.2d 271 (1998). It subjects "persons on federal lands to federal prosecution in federal court for violations of criminal statutes of the state in which the federal lands are located." *United States v. Kiliz*, 694 F.2d 628, 629 (9th Cir.1982). Thus, the ACA "establishes uniformity in a state's prohibitory laws where such conduct is not made penal by federal statutes." *United States v. Marcyes*, 557 F.2d 1361, 1364 (9th Cir.1977). The Act provides:

> Whoever within or upon any of the places now existing or hereafter reserved or acquired as provided in section 7 of this title ... is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District

in which such place is situated, ... shall be guilty of a like offense and subject to a like punishment.

18 U.S.C. § 13(a).

The ACA assimilates only criminal laws. *See United States v. Carlson*, 900 F.2d 1346, 1347–48 (9th Cir.1990). Here, there is no question that Cal. Bus. & Prof.Code § 6126(a) is a penal provision. *See Drake v. Superior Court (Clements)*, 21 Cal.App.4th 1826, 26 Cal.Rptr.2d 829, 832 (1994) (engaging in the unauthorized practice of law in violation of § 6126 is "criminal conduct"). Nevertheless, Clark contends, § 6126(a) cannot be assimilated because it is part of the state's regulatory system for licensing attorneys. She argues that it does not become enforceable as federal law simply because it has a criminal component. In her view, the district court misfocused the inquiry by analyzing the unauthorized practice of law rather than the practice of law. Had the court instead analyzed the practice of law, she submits, it would have seen that California does not prohibit the practice of law but rather permits it, subject to regulation. In this respect, Clark posits, the California statutes regulating the practice of law are similar to its gambling statutes, which the Supreme Court held are regulatory because California did not prohibit all forms of gambling but only certain types of high stakes bingo. *California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 211–12, 107 S.Ct. 1083, 94 L.Ed.2d 244 (1987). Thus, Clark maintains, although § 6126(a) is a criminal statute, its intent is only to provide a penalty for violation of § 6125, a provision of the State Bar Act that regulates the profession by providing that no one may practice law in the State unless she is an active member of the State Bar.[2] As such, she asks us to conclude, it is not a

---

**2.** Cal. Bus. & Prof.Code § 6125 provides:
No person shall practice law in California unless the person is an active member of the State Bar.
Cal. Bus. & Prof.Code § 6126(a) provides:

Any person advertising or holding himself or herself out as practicing or entitled to practice law or otherwise practicing law who is not an active member of the State Bar, is guilty of a misdemeanor.

prohibitory statute but a regulatory one with a penal component.

■ We have, however, previously rejected the heart of Clark's position-that a penal provision which is part of a larger regulatory scheme cannot be assimilated. It can be, at least when the statute is criminal and it is "prohibitory." In *United States v. Marcyes*, 557 F.2d 1361 (9th Cir. 1977), we considered whether a Washington statute making possession of dangerous fireworks a crime was assimilated. There as here, the defendant argued that the ACA could not be used to enforce the penal provisions of state regulatory laws such as the Washington fireworks laws. We recognized that a strong argument could be made that Congress did not intend to include such provisions within the ACA, because "a state could thereby enforce its regulatory system on the federal jurisdiction by making criminal any failure to comply with those regulations (i.e., licenses, permits, etc.)." *Id.* at 1364 (citing *Johnson v. Yellow Cab Transit Co.*, 321 U.S. 383, 390 n. 8, 64 S.Ct. 622, 88 L.Ed. 814 (1944)). However, as we explained, the argument loses force when the statute is considered prohibitory rather than regulatory. Thus, when a statute is intended to prohibit particular conduct in order to promote the general welfare, and is not primarily a licensing law aimed at regulating particular conduct (hunting or fishing, for example) and generating revenues, then assimilation serves the purpose of the ACA to fill in the gaps of criminal law applicable to federal enclaves. In *Marcyes* we concluded that the Washington law intended to prevent the general possession or sale of dangerous fireworks was prohibitory, and thus assimilated. The same is true of the California law in this case, which is intended to prohibit the unauthorized practice of law. *See also United States v. Quemado*, 26 F.3d 920, 922 (9th Cir.1994) (state statute prohibiting driving after suspension or revocation of license for drunk driving assimilated); *United States v. Foumai*, 910 F.2d 617, 619 (9th Cir.1990) (state statutes prohibiting driving without insurance and driving with a suspended license assimilated); *United States v. DeWater*, 846 F.2d 528, 529 (9th Cir.1988) (state statute prohibiting driving under the influence assimilated); *cf. Carlson*, 900 F.2d at 1347–48 (Hawaii speed limits law that was a violation rather than a crime not assimilated).

Section 6126 is not a licensing law. Its purpose is neither to regulate the described conduct nor to generate revenues; rather, together with § 6125, it prohibits and penalizes all forms of the unauthorized practice of law. *See Drake*, 26 Cal.Rptr.2d at 830 (describing the "long-standing, statutory prohibition against the practice of law by persons not admitted to the Bar"). Furthermore, it does so in order to protect the public from inadequate representation. *See Gerhard v. Stephens*, 68 Cal.2d 864, 69 Cal.Rptr. 612, 651, 442 P.2d 692 (1968) (California law prohibits the unauthorized practice of law "to afford protection against persons who are not qualified to practice the profession"). As in *Marcyes*, 557 F.2d at 1364, where we noted that allowing appellants to operate their fireworks stands would "circumvent Washington's determination that the possession of fireworks is dangerous to the general welfare," failure to assimilate § 6126 would circumvent California's determination that the unauthorized practice of law poses a threat to the general public. And the fact that § 6126 prohibits all unauthorized practice distinguishes it from *Cabazon*, where California did not prohibit all forms of gambling. In sum, the unauthorized practice of law is flatly prohibited and criminally penalized, and that suffices for assimilation.

B

■ Even so, Clark argues that § 6126 cannot be assimilated because her conduct is punishable as criminal contempt under Article 48 of the Uniform Code of

Military Justice.[3] This is not correct, for although only those laws governing conduct "not made punishable by any enactment of Congress" may be assimilated, 18 U.S.C. § 13(a), "any enactment" refers only to enactments of general applicability. *United States v. Debevoise*, 799 F.2d 1401, 1403 (9th Cir.1986). For this reason, in *Debevoise*, a state drunk driving statute was assimilated even though the defendant was also subject to punishment under Article 111 of the UCMJ. Article 48 is no more an enactment of general applicability that punishes contumacious conduct across the board than Article 111. Accordingly, *Debevoise* controls and Article 48 does not trump § 6126.

### C

■■ In the same vein, Clark contends that § 6126 cannot be assimilated because it conflicts with the less rigid federal policy set out in Article 27 of the UCMJ and Rule for Courts–Martial 501(d)(3).[4] However, regardless of how these provisions should be read and whether they apply to Clark's conduct, neither the UCMJ nor the Rules for Courts–Martial is a punitive enactment of Congress for purposes of the ACA. Because they are not generally applicable, these promulgations do not establish federal policy against which a state statute must be measured for conflict or inconsistency. *See Debevoise*, 799 F.2d at 1403. Article 27 and Rule 501(d)(3) do not, therefore, preclude assimilation of § 6126.

### D

■■ Finally, Clark argues that incorporation of § 6126 violates her equal protection and due process rights because it is irrational to distinguish between those who are subject to § 6126's prohibition and those members of the armed forces who may represent an accused under Article 27(b) of the UCMJ. Because lawyers are not a protected class, only a rational distinction needs to exist. *See Nelson v. City of Irvine*, 143 F.3d 1196, 1205 (9th Cir. 1998) (rational basis test applies unless a classification trammels fundamental rights or implicates a suspect classification). It is not irrational to distinguish between those who have practiced law without being certified by the proper licensing authority (or otherwise obtaining permission to practice[5]), and those permitted to prac-

**3.** Article 48 states that "[a] court-martial, provost court, or military commission may punish for contempt any person who uses any menacing word, sign, or gesture in its presence, or who disturbs its proceedings by any riot or disorder." 10 U.S.C. § 848.

**4.** Article 27(b) requires that trial or defense counsel detailed for a general court-martial

(1) must be a judge advocate who is a graduate of an accredited law school or is a member of the bar of a Federal court or of the highest court of a State; or must be a member of the bar of a Federal court or of the highest court of a State; and

(2) must be certified as competent to perform such duties by the Judge Advocate General of the armed force of which he is a member.

10 U.S.C. § 827(b).

Secretary of the Navy Instruction 1120.9A requires that in order to be certified as a judge advocate pursuant to Article 27(b), an officer must (1) have a degree in law from an ABA accredited law school; (2) be admitted to the bar of a Federal court or the highest court of state, territory, commonwealth, or the District of Columbia; and (3) have successfully completed the lawyer course at the Naval Justice School.

Rule 501(d)(3) of the Rules for Courts–Martial provides:

(2) *Qualifications of individual military and civilian defense counsel.* Individual military or civilian defense counsel who represents an accused in a court-martial shall be:

(A) A member of the bar of a Federal court or of the bar of the highest court of a State; or

(B) If not a member of such a bar, a lawyer who is authorized by a recognized licensing authority to practice law and is found by the military judge to be qualified to represent the accused upon a showing to the satisfaction of the military judge that the counsel has appropriate training and familiarity with the general principles of criminal law which apply in a court-martial.

**5.** In California, for example, a person who is not a member of the State Bar of California but who is a member in good standing of the

tice under Article 27 who have been properly certified and may lawfully act as trial counsel or defense counsel in a general court-martial. *See* 10 U.S.C. § 827(b); Rules for Courts–Martial 502(d)(1).

## III

As a condition of her two-year term of probation, the district court ordered that Clark "not be employed by, affiliated with, own or control, or otherwise participate, directly or indirectly, in the conduct of affairs of any law office, or any institution in the business of providing legal services." Clark argues that this condition improperly restricted her ability to be employed in the legal field and that a less restrictive alternative could have been adopted that would have enabled her to pursue employment in some legal endeavor yet adequately protect the public by, for example, prohibiting her only from appearing in court or authoring a document on behalf of a law office or volunteer legal organization.

The condition imposed meets the requirements of the applicable guideline, U.S.S.G. § 5F1.5,[6] and we are not firmly convinced that the district court erred in finding it necessary and reasonable. The prohibition on being associated with law is directly related to the offense, which is the unauthorized practice of law, and was reasonably necessary to protect the public because Clark never acknowledged that

she had done anything wrong; continued to engage in the same conduct after being removed from the cases on which the indictment was based and after it was returned; and repeatedly misrepresented her status to the military judges before whom cases in which she wished to be counsel for defendants were pending. Accordingly, imposing the condition was well within the district court's discretion.

AFFIRMED.

---

bar of any United States court or of the highest court in any state may be admitted in the court's discretion to appear in a pending matter as counsel pro hac vice. Cal.Rules of Court, Rule 983.

**6.** The Sentencing Guidelines apply to ACA offenses. *See United States v. Rapal*, 146 F.3d 661, 665 (9th Cir.1998). Section 5F1.5 provides:

    a. The court may impose a condition of probation or supervised release prohibiting the defendant from engaging in a specified occupation, business, or profession, or limiting the terms on which the defendant may do so, only if it determines that:

      a. a reasonably direct relationship existed between the defendant's occupation, business, or profession and the conduct relevant to the offense of conviction; and

      b. imposition of such a restriction is reasonably necessary to protect the public because there is reason to believe that, absent such restriction, the defendant will continue to engage in unlawful conduct similar to that for which the defendant was convicted.

    b. If the court decides to impose a condition of probation or supervised release restricting a defendant's engagement in a specified occupation, business, or profession, the court shall impose the condition for the minimum time and to the minimum extent necessary to protect the public.

U.S.S.G. § 5F1.5 (1997).