**MASHANTUCKET PEQUOT TRIBE**

v.

**Austin J. McGUIGAN, Chief State's Attorney, State of Connecticut.**

**Civ. No. H–85–210(PCD).**

United States District Court,
D. Connecticut.

Jan. 9, 1986.

Barry A. Margolin, Thomas N. Tureen, Tureen & Margolin, Portland, Me., Sharon S. Tisher, Day, Berry & Howard, Hartford, Conn., for plaintiff.

Carl Schuman, Asst. State's Atty., Wallingford, Conn., for defendant.

### RULING ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

DORSEY, District Judge.

Plaintiff seeks a declaratory judgment and injunctive relief to preclude enforcement of state statutes pertaining to the conduct of bingo games on plaintiff's reservation. The court has jurisdiction. 28 U.S.C. §§ 1343, 1362.

The matter is presented for final adjudication by the parties' cross-motions for summary judgment. The parties have stipulated to the controlling facts and thus summary judgment is a proper means of resolving the matter. Rule 56(c), Fed.R. Civ.P. Defendant's threat of prosecution satisfies the requirement that there be presented to the court a case or controversy. *Barona Group of Capitan Grande Band of Mission Indians v. Duffy*, 694 F.2d 1185, 1187 (9th Cir.1982), *cert. denied*, 461 U.S. 929, 103 S.Ct. 2091, 77 L.Ed.2d 301 (1983). For the reasons discussed herein,

the motion of plaintiff is granted, the motion of defendant is denied.

*Facts*

1. Plaintiff is an Indian tribe and thus a legally cognizable entity.

2. Plaintiff's governing body, the Tribal Council, has been duly recognized by the Secretary of Interior. 25 U.S.C. § 1758(a).

3. Defendant was the Chief State's Attorney charged with overall enforcement of its criminal statutes.[1]

4. Land in Ledyard, Connecticut, has been designated as the Mashantucket Pequot Reservation ("Reservation").

5. Plaintiff is empowered to exercise its authority within the Reservation.

6. Within the authority claimed by plaintiff is the power to administer law and order on the reservation.

7. On February 7, 1985, the Tribal Council duly enacted a Bingo Control Ordinance which authorized, established a procedure for and controlled bingo games on the Reservation.

8. The Bureau of Indian Affairs of the Department of the Interior has made a development grant to plaintiff, pursuant to 25 U.S.C. § 13 and 25 C.F.R. Part 278, to construct a Reservation facility in which bingo games will be conducted.

9. Revenue from bingo will service the debt to be incurred by the tribe to complete the facility, reimburse the Bureau grant and cover a significant portion of the tribe's governmental budget.

10. The bingo games were commenced in February 1985.

11. No authority for the games was sought pursuant to the laws of the State of Connecticut, nor were its regulations and reporting requirements complied with. Plaintiff does not intend to conduct its bingo games either pursuant or subject to the requirements of Connecticut law.

12. Defendant has stated his intention to enforce the laws of the State of Connecticut, including criminal prosecutions, as they regulate and control bingo games.

*Discussion*

Plaintiff relies on Articles I, § 8, and VI of the Constitution of the United States, 25 U.S.C. §§ 1321, *et seq.*, and 1751, *et seq.* The latter sections constitute the Connecticut Indian Land Claims Settlement Act, Public Law 98–134. Plaintiff claims sovereignty over its Reservation. Defendant disputes plaintiff's sovereignty and, under a general authority to enforce Connecticut's criminal laws, claims the right to enforce, on the Reservation, Connecticut's bingo laws, to wit: Connecticut General Statutes, §§ 7–169, 7–169a, 7–169b and 53–278b. In effect, plaintiff claims sole authority to adopt and enforce regulatory laws with respect to the Reservation and the activities thereon while defendant claims that the conduct of bingo on the Reservation is subject to the criminal laws of the State of Connecticut.

The parties agree that there are no genuine issues of material fact. Thus, the issue framed is whether the tribe's conduct of bingo games remains solely within its sovereignty or is subject to the regulation and control of the State of Connecticut by reason of its bingo laws.

The tribe is the successor to the claims of the Western Pequot Tribe of Indians asserting right, title or interest in and to public and private lands allegedly originally the property of the tribe and wrongfully misappropriated from the tribe in violation of the Constitution and laws of the United States, including, without limitation, the Trade and Intercourse Act of 1790, Act of July 22, 1790 (Ch. 33, § 4, 1 Stat. 137, 138) and the Amendments thereto. These claims were the subject of a lawsuit in this court, *Western Pequot Tribe of Indians v. Holdridge Enterprises, Inc.*, Civil H–76–193. To eliminate all Tribal claims to any lands, Congress by 25 U.S.C. §§ 1751–1760

---

1. While defendant has since been replaced as Chief State's Attorney, the court will treat him in his representative capacity as the person-ification of Connecticut's law enforcement organization.

and the State of Connecticut by the Act to Implement the Settlement of the Mashantucket Pequot Indian Land Claims approved June 9, 1982, Connecticut Special Acts 82–31, created the Reservation to constitute the Tribal lands in lieu of claims to any and all other lands allegedly transferred from the tribe contrary to law. *See* 25 U.S.C. §§ 1753, 1754, 1759. The implementation of these laws completed the settlement of the noted lawsuit.

In 1953, Congress had placed specific "Indian country" within the criminal jurisdiction of given states. Public Law 83–280, § 2 as codified in 18 U.S.C. § 1162. The vesting language there used is repeated in Public Law 90–284 (which replaced Public Law 83–280) and Public Law 98–134, § 6, but it is significant to note that for all "Indian country" to be made subject to a state's criminal jurisdiction, by virtue of the terms of Public Law 90–284, a state must assume jurisdiction and the consent of the tribe in a special election is required.

The unique status of Indian tribes has been recognized by Congress and has been deemed akin to a sovereign. *United States v. Wheeler*, 435 U.S. 313, 328, 98 S.Ct. 1079, 1088, 55 L.Ed.2d 303 (1978). "States are generally precluded from exercising jurisdiction over Indians in Indian country unless Congress has clearly expressed an intention to permit it.... This rule derives in part from respect for the plenary authority of Congress in the area of Indian affairs.... Accompanying the broad congressional power is the concomitant federal trust responsibility toward the Indian tribes.... That responsibility arose largely from the federal role as a guarantor of Indian rights against state encroachment." *Washington Dep't of Ecology v. EPA*, 752 F.2d 1465, 1469–70 (9th Cir.1985) (citations omitted). *See McClanahan v. Arizona State Tax Comm'n*, 411 U.S. 164, 172, 93 S.Ct. 1257, 1262, 36 L.Ed.2d 129 (1973). Accordingly, in Public Law 90–284, 82 Stat. 73, Congress:

(a) consented to a state's assumption of jurisdiction;

(b) if not previously possessed;

(c) over criminal offenses by or against Indians;

(d) in Indian Country (the equivalent of reservations);

(e) if consented to by the tribe there residing;

(f) to the same extent as the state's jurisdiction elsewhere within its boundaries.

After reciting the foregoing, as above paraphrased, § 401(a) of Public Law 90–284 goes on to read:

and the criminal laws of such state shall have the same force and effect within such Indian Country or part thereof as they have elsewhere within that state.

As thus incorporated in § 401(a), not in a separate sentence, and as unlikely to have been intended to have a separate effect, independent of the prior provisions of § 401(a), the quoted phrase is construed to describe the force and effect of state law upon fulfillment of the conditions in paragraphs (a) through (f) above. This would perhaps be clearer if the word "then" were inserted such that the quoted phrase read

and the criminal laws of such state shall then have....

The method of a state's assumption of criminal jurisdiction is not specified by § 401, but is found in § 406, codified in 25 U.S.C. § 1326, wherein the election to effectuate consent is set forth and is mandatory. *Kennerly v. District Court of the Ninth Judicial Dist.*, 400 U.S. 423, 428–29, 91 S.Ct. 480, 482–83, 27 L.Ed.2d 507 (1971).

Against this backdrop, Congress enacted, with Connecticut's participation, the Connecticut Indian Claim Settlement Act, Public Law 98–134, 97 Stat. 851, 25 U.S.C. § 1751, *et seq.* There is no claim that Connecticut has formally acted to assume criminal jurisdiction over the land which now constitutes plaintiff's Reservation, Indian lands for the purpose of federal statutes, nor that the tribe has consented to such assumption. With nothing more, plaintiff claims that the law cannot be construed to vest Connecticut with criminal jurisdiction to enforce its bingo laws be-

248

cause they are not "criminal laws" to which the Settlement Act, Public Law 83–280, 67 Stat. 588, refers. The phrase "and the criminal laws of such state or territory shall have the same effect within such Indian Country as they have elsewhere within the state or territory" appears in § 2 of Public Law 83–280, 18 U.S.C. § 1162(a), and granted criminal jurisdiction to several states. That grant, and § 4 as to civil jurisdiction, 28 U.S.C. § 1360, has been held not to vest states with jurisdiction to impose civil/regulatory laws within the reservations. *Barona Group*, 694 F.2d at 1188, citing *Bryan v. Itasca County*, 426 U.S. 373, 383–87, 96 S.Ct. 2102, 2108–10, 48 L.Ed.2d 710 (1976). California was specifically named as a grantee of general criminal jurisdiction over Indian lands within its borders in Public Law 83–280, 18 U.S.C. § 1162(a). Whether that grant included jurisdiction to enforce California's bingo laws was held by the Ninth Circuit to be determined by whether those laws "are classified as civil/regulatory or criminal/prohibitory." *Barona Group* at 1188.[2] Finding the bingo laws to be regulatory, the Ninth Circuit held that *Bryan* precluded their enforcement by the state on Indian land. A general grant of criminal law jurisdiction was thus held not to be a grant of civil/regulatory jurisdiction. *United States v. Marcyes*, 557 F.2d 1361 (9th Cir. 1977). In response to this construction, defendant argues that Public Law 83–280 should not be so construed and, further, that the cases so holding, *Barona Group; Seminole Tribe v. Butterworth*, 658 F.2d 310, 313 (5th Cir.1981), *cert. denied*, 455 U.S. 1020, 102 S.Ct. 1717, 72 L.Ed.2d 138 (1982); *Oneida Tribe of Indians v. Wisconsin*, 518 F.Supp. 712, 720 (W.D.Wis. 1981), are simply erroneously decided.

Public Law 98–134, § 6 placed plaintiff's Reservation on the same footing as Indian land then controlled by Title IV of Public Law 90–284, the successor to Public Law 83–280. This treatment is not distinguishable from Congress' plan for determining the interrelationship of Indian lands and the tribes living thereon and the states in which they are located, except that plaintiff's Reservation, by explicit reference in Public Law 98–134, is introduced into the general embrace of existing federal law. Defendant argues that, when Congress acted to create plaintiff's Reservation and designated it as "Indian Land," its grant of jurisdiction was to the maximum extent of Title IV of Public Law 90–284. *See* Public Law 98–134, § 6, 25 U.S.C. § 1755. That grant is claimed to be self-executing as exempt from the special election requirements of 25 U.S.C. § 1326, pursuant to which Tribal consent is given. While Public Law 98–134 eliminates the consent election provided in 25 U.S.C. § 1326, it may have created an anomaly by the fact that it does not eliminate the consent requirement of 25 U.S.C. § 1321. It is not necessary, however, to resolve that question if the holdings of *Barona Group, Seminole* and *Oneida* are sound and if Connecticut's bingo laws are properly deemed civil/regulatory and not criminal/prohibitory.

What is meant by "criminal law" is a federal question. There is a difference between a criminal law which prohibits conduct and imposes penal sanctions if the prohibition is disobeyed, and a law which regulates, controls and/or limits conduct. Connecticut has a scheme for dealing with bingo which is not part of the criminal code, but rather is part of the delegation of authority to municipalities. Bingo may be conducted in a municipality which affirmatively votes to permit it, Conn.Gen.Stat. § 7–169(b), but then only under regulations adopted by the Commissioner of Public Safety to prevent fraud and protect the public. Conn.Gen.Stat. § 7–169(c). A sponsor of bingo (plaintiff is not qualified, according to defendant) is required to obtain a permit under a regulatory scheme provided by Conn.Gen.Stat. §§ 7–169(d), (e), (f), (g) and (j) and Conn.Gen.Stat. § 7–169a. Records and reports are required. Conn.

**2.** Thus, purely criminal law jurisdiction was controlled by § 2 of the Public Law and civil jurisdiction was controlled by § 4. But neither was held to give states authority to exercise civil/regulatory power over Indian lands.

Gen.Stat. §§ 7–169(h), 7–169b. Prizes are limited. Conn.Gen.Stat. § 7–169(i). A penalty is provided for promotion or operation of a bingo game contrary to the regulatory scheme. Conn.Gen.Stat. § 7–169(k). There is no blanket prohibition of bingo nor is it a part of an overall criminalization of gambling. Conn.Gen.Stat. § 53–278a(2). Bingo can hardly be deemed to contravene a public policy against gambling in view of the state's daily encouragement and broad enticement of its citizens to participate in the state run gambling which generates substantial revenue for the state as would plaintiff's bingo games for its governmental functions. To be sure, taken by itself, Conn.Gen.Stat. § 7–169(k), as any criminal law, provides penalties for disobedience of the regulatory scheme. Yet, it is found among related bingo statutes and is part of the overall regulatory scheme. Isolated consideration of § 7–169(k) ignores the general purpose of the scheme as a method of regulation of an activity. The purpose of regulation is to permit the conduct or activity with limits or restrictions. In contrast, the purpose of a criminal statute, which stands alone, is to prohibit conduct or activity. By its terms, § 7–169(k) relates to conduct restricted or regulated by the other laws which make up the bingo regulatory scheme. The penal sanction in § 7–169(k) is but a means by which the regulatory scheme is enforced. Thus, by looking at the entire block of bingo laws, the true essence of what the state has done becomes clear. It has regulated. *United States v. Marcyes*, 557 F.2d at 1364. Connecticut has adopted a policy of permitting bingo. It has imposed certain restrictions and limits in order to cope with problems which might otherwise be created.

 Thus the grant to the states of jurisdiction over criminal laws is a grant of the authority to prohibit conduct. Such a grant is not the same as a grant of power to regulate conduct, otherwise permitted. The policy of nurturing the strength and dignity of Indian tribes and encouraging their exercise of a measure of self-government and fiscal autonomy dictates that a grant of power over the tribes be found

only when it is expressed clearly. A grant of the power to regulate, albeit enforceable by penal sanctions for disobedience, may logically be divided from a grant of authority over criminal law. *Bryan v. Itasca County*, 426 U.S. at 390, 96 S.Ct. at 2111.

 Thus, the dominant character of the nature and purpose of Connecticut's bingo laws is regulatory and the single penal statute included therein is not to be considered in isolation. As Connecticut's bingo laws are regulatory, the single penal statute included therein is not to be considered in isolation. As a regulatory action, Connecticut's bingo laws, including Conn.Gen.Stat. § 7–169(k), the penal statute, are found not to be enforceable under a grant of jurisdiction over criminal law. Plaintiff's motion for summary judgment is, therefore, granted. Defendant's motion for summary judgment is denied.

Plaintiff's request for attorney's fees was not briefed by either party and thus might be considered abandoned. Yet rather than leaving the issue unaddressed, however, the request will be denied. As made under the terms of 42 U.S.C. § 1988, an award of attorney's fees to the prevailing party is proper where the action is to enforce provisions of 42 U.S.C. § 1981, 1983, 1985, 1986, or Title IX of Public Law 92–318 or Title VI of the Civil Rights Act of 1964. Plaintiff's action does not fall within any of the aforementioned. Thus, § 1988 is not applicable.

Accordingly, judgment shall enter for plaintiff as follows:

1. Declaring Connecticut's bingo laws, Conn.Gen.Stat. §§ 7–169, 7–169a and 7–169b not to be enforceable on plaintiff's Reservation nor in relation to the conduct of bingo games conducted thereon.

2. Permanently enjoining defendant, his successors, his subordinates, agents and employees, or the subordinates, agents and employees of his successors, from enforcing or prosecuting under the authority of Conn.Gen.Stat. §§ 7–169, 7–169a and 7–169b, any person who operates, promotes or conducts or assists in the operation,

conduct or promotion of bingo games on the Reservation of plaintiffs.

SO ORDERED.