Hon. Richard H. Edwards Informal Opinion District Attorney No. 97-39 County of Franklin Court House 63 West Main Street Malone, N Y 12953
Dear Mr. Edwards:
You have requested our opinion as to whether recently enacted legislation relating to "combative sport" is enforceable on Indian reservations.
The statute provides that "[n]o combative sport shall be conducted, held or given within the State of New York, and no licenses may be approved by the commission [State Athletic Commission] for such matches or exhibitions". L 1997, Ch 14(2). "A person who knowingly advances or profits from a combative sport activity shall be guilty of a class A misdemeanor, and shall be guilty of a class E felony if he or she has been convicted in the previous five years of violating this subdivision". Id., Ch 14(3). The statute also establishes civil penalties. Id., Ch 14(3).
Chapter 14 defines combative sport and distinguishes it from boxing, sparring, wrestling and martial arts[1]. Id., Ch 14(2). The statute also defines the acts of advancing and profiting from combative sport activity. Id., Ch 14(3). Finally, the legislation repealed chapter 708 of the Laws of 1996, which required the licensing of combative sport events, established restrictions on attendance at these events, required insurance, provided limitations on fighting in order to protect contestants, and delegated regulatory authority over combative sport to the State Athletic Commission.
The Memorandum in Support of Assembly 2718 (enacted as Chapter 14) characterizes combative sport as a bloody sport, also known as extreme fighting, which involves two unprotected opponents kicking, punching, kneeing and pummeling each other until one surrenders. It states that "this is a brutal sport that should not be condoned by the State of New York".
Your question is whether Chapter 14 of the Laws of 1997 may be enforced on Indian reservations. Indian tribes retain attributes of sovereignty over both their members and their territory. Tribal sovereignty is generally subordinate only to the Federal government and not to the states. Oklahoma Tax Comm'n. v. Potawatomi Tribe, 498 U.S. 505, 510
(1991). State laws may be applied to tribal Indians on their reservations with express authorization by Congress. Id. In this regard, the State of New York has been granted jurisdiction over "offenses committed by or against Indians on Indian reservations within the State of New York to the same extent as the courts of the State have jurisdiction over offenses committed elsewhere within the State as defined by the laws of the State". 25 U.S.C. § 232. See, Penal Law § 10.00(1) for the definition of an "offense".
In California v. Cabazon Band of Mission Indians, 480 U.S. 202 (1987), the United States Supreme Court adopted a test to determine whether a state law is "criminal\prohibitory" and therefore enforceable on Indian reservations under Federal authority or "civil\regulatory" and thus outside the delegation of authority to the state. Id., p 209.[2] If the intent of the state law is to prohibit certain conduct, it falls within the grant of criminal jurisdiction. Id. If the state law, however, generally permits the conduct, subject to regulation, it is classified as civil\regulatory and may not be enforced on an Indian reservation. Id. "The shorthand test is whether the conduct at issue violates the State's public policy." Id.; Mashantucket Pequot Tribe v. State of Conn.,913 F.2d 1024, 1029 (2d Cir 1990), cert denied, 499 U.S. 975 (1991);Seminole Tribe of Florida v. Butterworth, 658 F.2d 310, 313 (5th Cir),cert denied, 455 U.S. 1020 (1981).
In Cabazon, the State of California sought to apply to Indian tribes a state statute, adopted under a Federal grant of jurisdiction (18 U.S.C. § 1162[a]), permitting the playing of bingo only when the games are operated and staffed by members of designated charitable organizations who could not be paid for their services. Cabazon, supra, p 205. California asserted that bingo games on the reservations violated these and other restrictions on the playing of bingo. Id. Since violation of the California statute relating to bingo is a misdemeanor, the state claimed that the statute is a criminal law which may be enforced on Indian reservations. Id., p 209.
In finding that the California bingo statute is regulatory, the Court noted that the state permits a substantial amount of bingo. Cabazon,supra, pp 210-211. Also, the Court found that a regulatory law enforceable by criminal as well as civil penalties is not converted into a criminal\prohibitory law only by reason of the criminal penalty. Id., p 211.
The Court notes in its opinion that this test is not a "bright-line" rule. Id., p 210. The applicable state law must be examined closely to determine whether it is regulatory or prohibitory. Id., p 211. For example, limited exceptions to the statutory prohibition will not necessarily make the law regulatory. Id., citing, United States v.Marcyes, 557 F.2d 1361, 1363-1365 (9th Cir 1977).
In our view, under the above analysis Chapter 14 of the Laws of 1997 is criminal\prohibitory rather than civil\regulatory. It establishes an absolute ban on the conduct of combative sport within the State of New York and creates criminal penalties for violations. The legislative intent, referred to above, clearly characterizes combative sport as a bloody, uncivilized form of fighting which should not be condoned by the State of New York. Applying the test enunciated in Cabazon, MashantucketPequot and Seminole, it is clear under the express language of the statute and its legislative history that combative sport violates the State's public policy.
Further evidence that Chapter 14 is not civil\regulatory is its repeal of a prior State law which provided for the licensing and regulation of combative sport. Under Chapter 14, combative sport is a defined activity, distinguished from wrestling, boxing, sparring and the martial arts. Also, the statutes and regulations applicable to the State Athletic Commission make it clear that combative sport does not qualify as boxing or wrestling, which are regulated by the Commission. Unconsolidated Laws §§ 8917(c), 8923; 19 NYCRR §§ 208.20, 210.8, 210.9, 210.27, 215.11.
We conclude that Chapter 14 of the Laws of 1997 establishes a complete ban on combative sport and creates criminal penalties for violations. Clearly, under the statute's provisions and legislative history combative sport is contrary to the public policy of the State. Chapter 14, therefore, is a criminal statute which under Federal authority may be enforced on Indian reservations.
The Attorney General renders formal opinions only to officers and departments of State government. This perforce is an informal and unofficial expression of the views of this office.
Very truly yours,
JAMES D. COLE
Assistant Attorney General
In Charge of Opinions
[1] Combative sport is defined as any professional match or exhibition other than boxing, sparring, wrestling or martial arts wherein the contestants deliver, or are not forbidden by the applicable rules thereof from delivering kicks, punches or blows of any kind to the body of an opponent or opponents. For the purposes of this section, the term "martial arts" shall include any professional match or exhibition sanctioned by [specific organizations, which may be removed from or added to the list by the State Athletic Commission based in part on whether the organization has certain rules to protect contestants].
[2] The Supreme Court recognized that a grant of general civil regulatory power over Indian reservations would result in the destruction of tribal institutions and values. Cabazon, supra, p 208. Congress has promoted the goals of Indian self-government, tribal self-sufficiency and economic development. Potawatomi, supra, p 510.